STATE OF NORTH CAROLINA v. JOHN CALVIN TATE

No. 97

(Filed 24 January 1978)

1. **Criminal Law § 82.1— attorney-client privilege—fact attorney sent letter to client**

    The fact that an attorney did communicate with his client in a certain manner on a certain date is not normally privileged information. Therefore, the trial court properly admitted an attorney's testimony that he had sent a letter to defendant on 22 December 1976.

2. **Criminal Law § 82.1— attorney-client privilege—letter from attorney to client—contents of letter—waiver of privilege**

    In a prosecution for murder and two felonious assaults in which the assault victims testified that defendant stated he was going to kill them because he had received a letter from his attorney stating that he would get ten years for shooting into the victims' house on an earlier occasion, and the attorney testified that he sent a letter to defendant three days before the assaults, the trial court properly ruled that if defendant elicited testimony from the attorney that the letter contained no statement that defendant was likely to receive a ten-year sentence for shooting into the victims' apartment, such action would constitute a waiver of the attorney-client privilege with respect to the entire contents of the letter.

3. **Constitutional Law § 30; Bills of Discovery § 6— summary denial of discovery motion at trial—harmless error**

    In this prosecution for murder and two felonious assaults, the trial court erred in summarily denying defendant's motion that the district attorney be required to disclose a statement given to police officers by a witness who testified at the trial that she saw defendant knocking on the door of the victims' apartment between 9 and 10 a.m. on the day of the crimes; however, such error was harmless beyond a reasonable doubt where defense counsel's cross-examination of the witness established that she was uncertain of the time she saw defendant knocking on the door of the victims' apartment; uncontradicted testimony of the two assault victims indicated that defendant was the person who went on a rampage in their apartment on the day in question; and another witness testified he saw defendant leaving the victims' apartment shortly before police officers arrived there.

4. **Criminal Law § 34.7— evidence of another crime—relevance to show intent**

    In this prosecution for murder and two felonious assaults, testimony by one assault victim that on an earlier occasion defendant came to her house with a pistol, forced her to have sexual relations with him and threatened to kill her if she called the police was relevant as tending to prove defendant's intent at the time he assaulted the victim, and such evidence was not inadmissible because it also tended to show that defendant committed a separate and independent crime.

**5. Criminal Law § 73.1— admission of hearsay—harmless error**

In this prosecution for murder and two felonious assaults, a newspaper boy's testimony that he saw defendant leave the victims' apartment at 10 a.m. was inadmissible hearsay where the witness testified that he knew the hour at which he had seen defendant only because his supervisor had driven by and told him the time; however, the admission of the newspaper boy's testimony concerning the time could not have prejudiced defendant where other witnesses, including the two assault victims, placed defendant at the victims' apartment at the time in question.

**6. Criminal Law § 99.2— court's private conversation with jurors—waiver of objection**

While the trial judge's private conversations with jurors who asked or started to ask questions addressed to the court were ill-advised and are disapproved, defendant waived objection to such procedure by failing to object thereto or to request disclosure of the substance of the conversations.

**7. Homicide § 24.1— instructions—presumption of malice**

In a homicide prosecution, the trial court's instructions on the mandatory presumption of malice were proper and constitutional where there was no evidence that the killing was committed in self-defense or in the heat of passion arising on sudden provocation.

**8. Criminal Law § 99.2— court's statement to prospective juror—no expression of opinion**

In this prosecution for murder and two felonious assaults wherein there was evidence tending to show that two of the victims were assaulted by defendant for the purpose of killing them so that they could not testify against him for shooting into their home, the trial court's statement to a prospective juror that "in many cases witnesses are eliminated, or—for reasons that they are witnesses" did not convey to the jury any opinion concerning defendant's guilt or the sufficiency of proof of any fact and did not constitute an expression of opinion in violation of G.S. 1-180.

Justice EXUM dissenting.

DEFENDANT appeals from judgments of *Grist, J.*, at the 23 May 1977 Session, MECKLENBURG Superior Court.

Defendant was tried upon bills of indictment charging him with the first degree murder of Tamara L. Robinson and with two counts of assault with a deadly weapon with intent to kill inflicting serious injury on Margaret Royster Robinson and Malinda Ann Robinson.

The State's evidence tends to show that on the morning of 25 December 1976, between the hours of 9 and 10, defendant knocked on the door of the Robinson family's apartment in

Charlotte. The door was answered by Mrs. Margaret Robinson. Margaret Robinson and defendant knew one another and had previously lived together but were not living together at this time. Mrs. Robinson had sworn out a warrant against defendant for shooting into her apartment the previous September, and that case was still pending.

When Mrs. Robinson answered the door, defendant inquired concerning the whereabouts of a mutual acquaintance, then turned and departed. Mrs. Robinson went upstairs to make up her bed and check on her granddaughter. A few moments later she turned to find defendant standing behind her. He attemped to choke her with a rope and she passed out. She regained consciousness briefly as defendant was cutting her on her neck, then again passed out.

Malinda Ann Robinson, the daughter of Margaret Robinson and the mother of Tamara, had spent Christmas Eve at a friend's house. She returned to the family's apartment on Christmas morning and knocked on the door until it was opened by defendant. Going upstairs, she saw her mother lying on the floor and was then attacked by defendant who attempted to choke her with his hands and with a broomstick. She passed out but awakened as defendant was cutting her on the face and neck with a razor blade box cutter. Defendant ceased cutting her and Malinda passed out again. Before passing out, however, she heard her daughter scream. Sometime later Malinda awakened and telephoned her boyfriend. When officers arrived at approximately 11 a.m. they found three-year-old Tamara with a cord around her neck. She had been strangled to death. Defendant was seen leaving the Robinsons' apartment about twenty to thirty minutes before the officers arrived.

Defendant did not testify but offered evidence tending to show that Margaret and Malinda Robinson were the beneficiaries of insurance policies totaling approximately $3,000 on the life of Tamara. Defendant also presented evidence tending to show that the doors to the Robinsons' apartment were equipped with properly functioning locks and, when locked, could not be opened without a key.

Other evidence necessary to an understanding of the case on appeal will be discussed in the opinion. A motion to bypass the Court of Appeals was allowed as to the assault convictions.

Defendant was convicted of second degree murder of Tamara Robinson and sentenced to life imprisonment. He was also convicted of two counts of assault with a deadly weapon with intent to kill inflicting serious bodily injury and sentenced to imprisonment for twenty years on each assault. Defendant appeals from the judgments, assigning errors noted in the opinion.

*Rufus L. Edmisten, Attorney General, by Jane Rankin Thompson, Associate Attorney, for the State of North Carolina.*

*Michael S. Scofield, Public Defender, and Grant Smithson, Assistant Public Defender, for the defendant appellant.*

HUSKINS, Justice.

Defendant's first two assignments of error concern evidentiary rulings of the trial court relating to a communication between defendant and the attorney who represented him in connection with another criminal charge. These assignments require further examination of the evidence adduced at trial.

[1]  State's witness Margaret Ann Robinson testified that during the course of his assault on her defendant stated: "I got a letter from my lawyer saying that I was going to make ten years for shooting in your house. . . . You are not going to live to testify." State's witness Malinda Ann Robinson testified: "[Defendant] said he was going to kill all of us because he got a paper from his lawyer saying he was going to make ten years for shooting in our house." Attorney Tate Sterrett was then called as a witness for the State and testified that he represented defendant in connection with a charge of shooting into an occupied dwelling. Sterrett was then asked: "Did you have an occasion to communicate with the defendant by letter on December 22nd of 1976?" Over defendant's objection the witness was directed to respond and his answer was in the affirmative. No further questions were asked. The trial court's ruling admitting this testimony constitutes defendant's first assignment of error.

It is well established that the substance of communications between attorney and client is privileged under proper circumstances. *See generally* 1 Stansbury's North Carolina Evidence § 62 (Brandis rev. 1973); McCormick on Evidence §§ 87-95 (2nd ed. 1972). Not all facts pertaining to the lawyer-client relationship are privileged, however. "[T]he authorities are clear that the privilege

extends essentially only to the substance of matters communicated to an attorney in professional confidence. Thus the identity of a client or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose, even though the fact of having retained counsel may be used as evidence against the client." *Colton v. United States*, 306 F. 2d 633, 637 (2nd Cir. 1962). We are of the opinion that the fact that an attorney did communicate with his client in a certain manner on a certain date is likewise not normally privileged information. "It is the substance of the [attorney-client] communication which is protected, however, not the fact that there have been communications." *United States v. Kendrick*, 331 F. 2d 110, 113 (4th Cir. 1964). *Accord, State v. Manning*, 162 Conn. 112, 291 A. 2d 750 (1971). We hold that the trial court properly admitted Attorney Sterrett's testimony that he had sent a letter to defendant on 22 December 1976. Defendant's first assignment of error is overruled.

[2] Following Attorney Sterrett's testimony that he had written a letter to John Calvin Tate, defense counsel sought to cross-examine Sterrett concerning the letter's contents. Sterrett testified in the absence of the jury that the letter he had written to defendant contained no statement that Tate was likely to receive a ten-year sentence for shooting into the Robinson apartment. Judge Grist ruled that if such testimony were elicited in the presence of the jury by defendant's questioning, such action would constitute a waiver of the attorney-client privilege with respect to the entire contents of the letter. This ruling constitutes defendant's second assignment of error.

It is well settled that the privilege afforded a confidential communication between attorney and client may be waived by the client when he offers testimony concerning the substance of the communication. *Hayes v. Ricard*, 244 N.C. 313, 93 S.E. 2d 540 (1956); *State v. Artis*, 227 N.C. 371, 42 S.E. 2d 409 (1947); *Jones v. Marble Co.*, 137 N.C. 237, 49 S.E. 94 (1904); McCormick on Evidence § 93 (2nd ed. 1972); 8 Wigmore, Evidence § 2327 (McNaughton rev. 1961). Defendant contends, however, that questions concerning what statements a confidential communication does *not* contain should not constitute a waiver of the attorney-client privilege with respect to the entire communication.

We are of the opinion that the trial court's ruling was correct. The letter itself is the best evidence of what it *does* and *does not* contain. Even if the letter contained no statement that defendant was likely to receive a ten-year sentence for shooting into the Robinson residence, it may have contained other statements of similar import. The privilege which preserves the confidentiality of the letter is deemed to be waived if Sterrett's testimony concerning the letter's contents is put into evidence before the jury. *Hayes v. Ricard, supra.* Defendant's second assignment of error is overruled.

[3] Defendant's third assignment of error relates to the failure of the trial court to order the district attorney to disclose a statement by State's witness Mary Harrell given prior to trial.

Mrs. Harrell testified at trial that defendant spent Christmas Eve at her family's home and that she saw defendant knocking on the door to Mrs. Robinson's apartment on Christmas morning between 9 and 10 a.m. On cross-examination defense counsel established that Mrs. Harrell had previously given a statement to police officers in connection with their investigation of the murder of Tamara Robinson. Defendant then moved that he be allowed to inspect this prior statement, and the motion was denied. No *in camera* inspection of the witness' prior statement was conducted, and no findings of fact were made respecting the court's refusal to permit defendant to inspect the prior statement of Mary Harrell.

The trial court's denial of defendant's motion was error. This question is thoroughly discussed in *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977):

"[W]e believe justice requires the judge to order an *in camera* inspection when a specific request is made at trial for disclosure of evidence in the State's possession that is obviously relevant, competent and not privileged. The relevancy for impeachment purposes of a prior statement of a material State's witness is obvious.

We do not hold as the United States Supreme Court has held, as a matter of federal criminal procedure, that a defendant is automatically entitled to such statements at trial. *Jencks v. United States*, 353 U.S. 657, 1 L.Ed. 2d 1103, 77 S.Ct. 1007 (1957), a holding that Congress subsequently ap-

proved and codified in the Jencks Act, 18 U.S.C. § 3500. *State v. Chavis,* 24 N.C. App. 148, 210 S.E. 2d 555 (1974), *cert. denied,* 287 N.C. 261, 214 S.E. 2d 434 (1975), *cert. denied,* 423 U.S. 1080 (1976).

Instead, we hold that since realistically a defendant cannot know if a statement of a material State's witness covering the matters testified to at trial would be material and favorable to his defense, [*Brady v. Maryland,* 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963)] and [*United States v. Agurs,* 427 U.S. 97, 49 L.Ed. 2d 342, 96 S.Ct. 2392 (1976)] require the judge to, at a minimum, order an *in camera* inspection and make appropriate findings of fact. As an additional measure, if the judge, after the *in camera* examination, rules against the defendant on his motion, the judge should order the sealed statement placed in the record for appellate review." 293 N.C. at 127-28, 235 S.E. 2d at 842.

In our opinion, however, the trial court's error was harmless beyond a reasonable doubt. Defense counsel's cross-examination of Mary Harrell established that she was uncertain of the time at which she saw defendant knocking on the door of the Robinson family's apartment. Even if her pretrial statement to police officers would have enabled counsel to completely destroy Mrs. Harrell's credibility, the uncontradicted testimony of Margaret and Malinda Ann Robinson indicates defendant was the person who went on a rampage in their home on Christmas morning. Moreover, State's witness Michael Walker, a local newspaper boy, testified that he saw defendant leaving the Robinsons' apartment on Christmas morning about twenty to thirty minutes before police officers arrived. The officers first arrived at the Robinson apartment at about 11 a.m. according to the testimony of Officer J. C. Boatman. We are satisfied beyond a reasonable doubt that the error of the trial court in summarily denying defendant's motion had no impact on the jury's verdict and did not contribute to defendant's conviction. *See Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963); *State v. Taylor,* 280 N.C. 273, 185 S.E. 2d 677 (1972).

[4] In response to questions propounded by the district attorney, Mrs. Margaret Robinson testified that at one time between summer and Christmas of 1976 defendant had come to her house

armed with a pistol, forced her to have sexual relations with him, and threatened to kill her if she called the police. Motion to strike this testimony was overruled. Defendant grounds his fourth assignment on this ruling.

It is a well settled rule of evidence in this jurisdiction that proof of crimes other than those for which defendant is being tried is generally inadmissible. This rule, however, is subject to a number of exceptions. The rule itself and the numerous exceptions thereto are discussed and documented by Justice Ervin in *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). The second exception noted in *McClain* is pertinent here:

> "2. Where a specific mental intent or state is an essential element of the crime charged, evidence may be offered of such acts or declarations of the accused as tend to establish the requisite mental intent or state, even though the evidence discloses the commission of another offense by the accused." (Citations omitted.) 240 N.C. at 175, 81 S.E. 2d at 366.

*Stansbury* formulates the rule thusly:

> "Evidence of other offenses is inadmissible on the issue of guilt if its only relevancy is to show the character of the accused or his disposition to commit an offense of the nature of the one charged; but if it tends to prove any other relevant fact it will not be excluded merely because it also shows him to have been guilty of an independent crime." 1 Stansbury's North Carolina Evidence § 91 (Brandis rev. 1973).

One of the crimes for which defendant was being tried—assault on Mrs. Margaret Robinson with a deadly weapon with intent to kill inflicting serious bodily injury—requires proof of a specific intent or mental state. Evidence tending to show that defendant had threatened to kill Mrs. Margaret Robinson if she reported his criminal conduct to the police is relevant as tending to prove defendant's intent at the time he assaulted her. *See, e.g., State v. Heard*, 262 N.C. 599, 138 S.E. 2d 243 (1964). In our opinion evidence both of the threat itself and of the context in which it was made is relevant and admissible here. Such evidence is not rendered inadmissible because it also tends to show that defendant has committed a separate and independent crime. Accordingly, defendant's fourth assignment of error is overruled.

[5]   Michael D. Walker, a local newspaper boy, testified that he saw defendant leave the Robinson apartment at about 10 a.m. on Christmas morning. On cross-examination Walker said he knew the hour at which he had seen defendant leave the Robinson home only because his supervisor had driven by and told him the time. Defendant moved to strike Walker's testimony with regard to the time he saw defendant leave the Robinson apartment because it was based totally on the hearsay statement of Walker's supervisor. Denial of defendant's motion constitutes his fifth assignment of error.

Walker's testimony concerning the time of day at which he had seen defendant is indeed hearsay, for "its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness. . . ." *State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830 (1974); 1 Stansbury's North Carolina Evidence § 138 (Brandis rev. 1973). In our view, however, the admission of Walker's testimony concerning the time could not have prejudiced defendant. Mary Harrell testified that she observed defendant knocking on Mrs. Robinson's door between 9 and 10 a.m. Mrs. Margaret Robinson testified that defendant knocked on her door between 9:30 and 10:00 a.m. and assaulted her shortly thereafter. Malinda Robinson testified that she arrived at her family's apartment at approximately 10:35 a.m. and was admitted by defendant after knocking for approximately twenty minutes. Charlotte Police Officer J. C. Boatman testified that it was about 11 a.m. when he drove to Mrs. Robinson's apartment in response to a call, and defendant was not there when Officer Boatman arrived. Michael Walker testified that he saw police officers arrive at the Robinson apartment "about twenty or thirty minutes after I saw John Tate leave the [Robinsons' apartment]."

Michael Walker's testimony that it was about 10 when he saw defendant leave the Robinson apartment was, in our opinion, entirely harmless and resulted in no prejudice to defendant. Accordingly, defendant's fifth assignment of error is overruled.

[6]   On two occasions during defendant's trial jurors asked, or started to ask, questions addressed to the court. In each case Judge Grist directed the juror to approach the bench and a private discussion between judge and juror ensued. By his sixth assignment of error defendant contends that such procedure was impermissible, requiring a new trial.

We are of the opinion that the trial court's private conversations with jurors were ill-advised. The practice is disapproved. At least, the questions and the court's response should be made in the presence of counsel. The record indicates, however, that defendant did not object to the procedure or request disclosure of the substance of the conversation. Failure to object in apt time to alleged procedural irregularities or improprieties constitutes a waiver. *See, e.g., State v. Hartsfield,* 188 N.C. 357, 124 S.E. 629 (1924). *See also State v. Tolley,* 290 N.C. 349, 226 S.E. 2d 353 (1976); *State v. Morgan,* 225 N.C. 549, 35 S.E. 2d 621 (1945). Defendant's sixth assignment of error is, therefore, overruled.

[7] Defendant's seventh assignment of error relates to a portion of the trial court's charge pertaining to murder. It is contended that the trial court erred by instructing the jury as follows: "Malice is implied in law *if no other evidence is presented* and when the State has satisfied the jury from the evidence beyond a reasonable doubt that the defendant, by means of a deadly weapon, intentionally inflicted injuries upon the deceased which proximately caused death." (Emphasis added.) At another point in the court's charge, the jury was instructed that under the circumstances described above "the law raises [the] presumption . . . that the killing was with malice."

*Mullaney v. Wilbur,* 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975), explicitly permits the use of mandatory presumptions under certain circumstances: "Many states do require the defendant to show that there is 'some evidence' indicating that he acted in the heat of passion before requiring the prosecution to negate this element . . . beyond a reasonable doubt. . . . Nothing in this opinion is intended to affect that requirement." *Mullaney, supra,* n. 28. This Court has repeatedly held that mandatory presumptions concerning the existence of malice and unlawfulness are proper and constitutional *so long as there is no evidence that the killing was committed in the heat of passion arising on sudden provocation or in self-defense. State v. Biggs,* 292 N.C. 328, 233 S.E. 2d 512 (1977); *State v. McCall,* 289 N.C. 512, 223 S.E. 2d 303 (1976); *State v. Hankerson,* 288 N.C. 632, 220 S.E. 2d 575, *reversed on other grounds,* --- U.S. ---, 53 L.Ed. 2d 306, 97 S.Ct. 2339 (1977); *State v. Williams,* 288 N.C. 680, 220 S.E. 2d 558 (1975). Where, as in this case, there is no evidence that the killing was committed in self-defense or in heat of passion arising on sudden

provocation, the instruction given by Judge Grist is correct. Defendant's seventh assignment of error is overruled.

[8] By his eighth and final assignment of error defendant contends that the trial court violated G.S. 1-180 in the course of its examination of a prospective juror.

The record shows that one prospective juror expressed reservations about her willingness to vote for conviction of a defendant if his guilt was shown only by circumstantial evidence. At defense counsel's request, Judge Grist questioned the juror regarding her willingness to consider circumstantial evidence. Following the juror's further expression of doubt as to whether she could vote to convict a defendant based on circumstantial evidence, the following transpired:

"COURT: You understand that crimes in many instances are committed in secret, don't you?

JUROR: Yes, sir.

COURT: And that in many instances witnesses are eliminated, or—for reasons that they are witnesses. You know that. And that it's necessary in many instances through the proper use of circumstantial evidence to submit a case to the jury whether they find the defendant guilty or not guilty, based on all the evidence, including circumstantial evidence. Understand that?

JUROR: Yes, sir."

The particular juror to whom these remarks were addressed was challenged for cause by the State and the challenge was allowed. Defendant contends, however, that the trial court's statement "in many cases witnesses are eliminated, or—for reasons that they are witnesses" constitutes an expression of opinion prohibited by G.S. 1-180. We think not. Admittedly, the evidence at defendant's trial tended to show that Margaret and Malinda Robinson were assaulted by defendant for the purpose of killing them so they could not testify against him for shooting into their home. Nonetheless, we are of the opinion that Judge Grist's statement quoted above did not convey to the jury any opinion concerning defendant's guilt or the sufficiency of proof of any fact. "[T]he test of prejudice resulting from a judge's remarks is whether a juror might reasonably infer that the judge *expressed partiality or in-*

*timated an opinion as to a witness' credibility or as to any fact to be determined by the jury." State v. Staley,* 292 N.C. 160, 165, 232 S.E. 2d 680, 684 (1977) (Emphasis added). Judge Grist's remarks do not constitute prejudicial error warranting a new trial.

Having considered all assignments raised by defendant's able brief, we think defendant had a fair trial free from prejudicial error. The verdicts and judgments must therefore be upheld.

No error.

Justice EXUM dissenting.

I think it was error to admit the witness Sterrett's statement that he communicated with defendant without also permitting Sterrett to explain that he did not advise defendant of the possibility of receiving a ten-year sentence.

This is a close case. The evidence is not overwhelming against defendant. For this reason I cannot subscribe to the majority's conclusion that other errors, which the majority concedes were committed at trial, were harmless.

I vote for a new trial.