STATE OF NORTH CAROLINA v. ELBERT C. MILLER

No. 7818SC216

(Filed 11 July 1978)

1. **Constitutional Law § 30; Bills of Discovery § 6— witnesses' descriptions of robber—denial of discovery at trial—harmless error**

    The trial court in an armed robbery case erred in the denial of defendants' motions at trial for discovery of statements given by the State's witnesses to police regarding their descriptions of the robber; however, such error was harmless beyond a reasonable doubt where such statements were revealed to defendant during cross-examination of the police officers and were used by defendant in his cross-examination of the other State's witnesses.

2. **Criminal Law § 66.9— photographic identification—no impermissible suggestiveness**

    Photographic identification procedures were not impermissibly suggestive so as to taint in-court identifications of defendant by three witnesses where each witness looked through hundreds of photographs of black males, some in a mug book and others in two trays containing 1200 unattached photographs;

State v. Miller

and each witness on separate viewings of the photographs selected a photograph identified as a photograph of defendant.

**3. Criminal Law § 66.16— in-court identifications—independent origin—no taint by photographic identifications**

The trial court's determination that in-court identifications of defendant by three witnesses in an armed robbery case were of independent origin and not tainted by photographic identification procedures was supported by the court's findings, based on competent evidence, that the interior of the store where the robbery occurred was well lighted with fluorescent lights; two witnesses who were in the store had an opportunity to observe the armed robber's face for several minutes; the third witness was outside the store in a well lighted area and was able to observe the robber's face for forty-five seconds as he headed toward the witness; the initial description given by one witness which was inconsistent with a later description was the result of her state of anxiety and excitement about the robbery; and both of the other witnesses described the robber as a man similar in stature to defendant.

**4. Criminal Law § 99.5— court's remarks to defense counsel—no denial of right to effective counsel or to confrontation**

The trial court's remarks to defense counsel did not deny defendant his rights to effective counsel and confrontation of witnesses where they constituted efforts to control the trial by preventing defense counsel from testifying, arguing with witnesses, interrupting witnesses and repeating issues already exhausted.

APPEAL by defendant from *Kivett, Judge.* Judgment entered 15 April 1977 in Superior Court, GUILFORD County. Heard in the Court of Appeals 27 June 1978.

Defendant was charged in a bill of indictment, proper in form, with armed robbery. He entered a plea of not guilty.

On defendant's pretrial motion to suppress the in-court identifications of the State's witnesses, a *voir dire* was held. The motion was denied. No evidence was presented by defendant at the *voir dire*. The State's evidence on *voir dire*, essentially the same as that at trial, tended to show the following:

On 19 December 1976 at approximately 8:00 p.m., two black males entered the Fairfield Superette in High Point. Lavada Fivecoat, part owner of the store, and David Thompson, an employee, were working there at the time. One of the black males pulled out a sawed-off shotgun and demanded all the money from the cash register. In the meantime, the other man had pulled a toboggan or mask over his face. Mrs. Fivecoat handed over the money, approximately $350.00, and the two men left. About this time, John Sexton was outside the store putting gas into his car

and observed two black males hurriedly leaving the store. He was able to get a good look at the one carrying the shotgun, because that person was not wearing a toboggan or mask over his face. All three of the eyewitnesses gave a description of the armed robber to the police immediately after the robbery and identified defendant as that person.

Defendant's evidence at trial tended to show that on the day in question, he was with his girl friend, Ann Friday, and her children the entire day. He has never owned or possessed a sawed-off shotgun.

The jury returned a verdict of guilty as charged and defendant was sentenced to a term of not less than twenty-four (24) years nor more than forty (40) years imprisonment. Defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Charles J. Murray, for the State.*

*Assistant Public Defender Frederick G. Lind, for the defendant.*

MARTIN, Judge.

[1] In his first assignment of error, defendant contends that the trial court erred in denying his motions at trial for discovery of the statements given by the State's witnesses to police regarding their descriptions of the robber. He argues that, as a result of the court's rulings, he was denied his right to due process and right of confrontation in that he was unable effectively to cross-examine, for impeachment purposes, State's witnesses Fivecoat and Thompson with regards to their in-court identifications of defendant.

In the recent case of *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977), our Supreme Court held that G.S. 15A-904(a), the statute applicable in the case at bar, does not bar the discovery at trial of prosecution witnesses' statements and that the trial court, in its discretion, must have the power to compel the disclosure of such facts when relevant and not otherwise privileged. In addition, we find in *Hardy* the following pertinent language:

". . . [W]e believe justice requires the judge to order an *in camera* inspection when a specific request is made at trial

for disclosure of evidence in the State's possession that is obviously relevant, competent and not privileged. The relevancy for impeachment purposes of a prior statement of a material State's witness is obvious."

Thus, in the instant case, the trial court's denial, without more, of the subject motions was error.

In our opinion, however, this error was harmless beyond a reasonable doubt, *see State v. Tate*, 294 N.C. 189, 239 S.E. 2d 821 (1978), for the reason that the record on appeal clearly discloses that defendant was in fact fully informed about the only statements shown to exist, and had ample opportunity to cross-examine the witnesses with respect thereto. Defendant's cross-examination of Officer Brown, one of the investigating officers, revealed that the only statement taken down by the investigating officers was Mrs. Fivecoat's description of the two black males. This statement was actually read into the record by Officer Brown and tended to show a discrepancy, in terms of weight and height, when compared with her later description and identification of the armed robber, allegedly defendant. Defendant was, therefore, aware of the contents of this statement before his cross-examination of Mrs. Fivecoat and did in fact cross-examine her on this point at trial. Again, on cross-examination of Officer Brewer, another investigating officer, defendant elicited the text of the statement given by Mrs. Fivecoat and Mr. Thompson. It was identical to the statement read into the record by Officer Brown. In light of the foregoing, we cannot find that defendant was denied his right to cross-examine the witnesses, for impeachment purposes, about their prior statements. This assignment of error is overruled.

[2] Defendant next contends that the trial court erred in denying his motion to suppress the in-court identifications of defendant by the State's witnesses Fivecoat, Thompson and Sexton. He argues that the pretrial photographic identification procedures used by the police were so suggestive in nature that the subsequent in-court identifications were irreparably tainted.

In-court identification of a defendant by a witness is barred when photographic identification procedures are "so impermissibly suggestive as to give rise to a very substantial likelihood

State v. Miller

of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968). In the instant case, the evidence presented on *voir dire* established that each of the State's witnesses was requested to look through literally hundreds of photographs of black males — some in a mug book and the others in two trays which contained approximately twelve hundred (1200) unattached photographs. Each of the State's witnesses — Fivecoat, Thompson and Sexton — on separate viewings of these photographs selected the same photograph, being the one identified on *voir dire* as the photograph of defendant. Prior to trial, the witnesses were shown the photograph of defendant and asked to identify it as being the one they had picked out. We are of the opinion that this record does not disclose a photographic procedure so impermissibly suggestive as to violate defendant's constitutional right to due process.

[3] Even were we to find that the pretrial photographic identification of defendant was impermissibly suggestive, which we expressly do not do, the in-court identification of defendant by the State's witnesses would be admissible if found to be of independent origin based solely upon the witnesses' observations at the time of the offense. *State v. Bundridge*, 294 N.C. 45, 239 S.E. 2d 811 (1978). At the conclusion of the *voir dire*, the trial court found, *inter alia:* (1) that the interior of the store where the robbery occurred was well lighted with fluorescent lights; (2) that both Mrs. Fivecoat and Mr. Thompson had opportunity to observe the face of the person holding the shotgun for several minutes; (3) that Sexton was outside the store in a well lighted area and was able to observe the face of the person with the shotgun for forty-five seconds as he headed straight towards Sexton; (4) that Mrs. Fivecoat's initial description of the armed robber was inconsistent with a later description, but was the result of her state of anxiety and excitement on the occasion of the robbery; and (5) that both Thompson and Sexton described the armed robber as a man similar in stature to defendant. Based on these findings, which are supported by competent evidence, the trial court concluded that the in-court identifications of the defendant by the State's three eyewitnesses were of independent origin, based upon observations made by them at the scene of the alleged robbery. We find no error in the court's conclusion. This assignment of error is overruled.

**[4]** By his next contention, defendant argues that the trial court's remarks to defense counsel denied defendant his rights to effective counsel and confrontation of witnesses. We disagree. The instances of the trial court's comments to defense counsel were numerous. Suffice it to say that in each of these instances, the court's comments were efforts to control the trial by preventing defense counsel from testifying, arguing with witnesses, interrupting witnesses and repeating issues already exhausted. We find defendant's reliance on *State v. Rhodes*, 290 N.C. 16, 224 S.E. 2d 631 (1976) misplaced. That case was clearly limited to the inherent dangers concomitant with judicial warnings and admonitions to a *witness with reference to perjury*, and therefore, is inapposite to the case at bar. This assignment of error is overruled.

We have carefully reviewed defendant's remaining assignments of error and find them to be without merit. Defendant received a fair trial free from prejudicial error.

No error.

Judges VAUGHN and MITCHELL concur in the result.