STATE OF NORTH CAROLINA v. CASEY JACK MONROE

No. 252A86

(Filed 31 January 1992)

**Constitutional Law § 344 (NCI4th) — capital case — unrecorded bench conferences with jurors — prejudice to defendant**

The trial court violated defendant's nonwaivable state constitutional right to be present at all stages of his capital trial by conducting unrecorded conferences with several jurors at the bench immediately following notification by the State and defense counsel that those particular persons were acceptable for service on the jury. The State cannot meet its burden of showing the harmlessness of this constitutional error where the trial court conducted its conferences outside the presence of the defendant, his counsel, and the court reporter.

**Am Jur 2d, Criminal Law §§ 908, 916.**

**Exclusion or absence of defendant, pending trial of criminal case, from courtroom, or from conference between court and attorneys during arguments on question of law. 85 ALR2d 1111.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by *Ellis*, *J.*, at the 24 March 1986 Criminal Session of Superior Court, SCOTLAND County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 12 November 1991.

STATE v. MONROE

[330 N.C. 846 (1992)]

*Lacy H. Thornburg, Attorney General, by Thomas F. Moffitt, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Justice.

Defendant was tried capitally on an indictment charging him with the first-degree murder of Karen Gibson Monroe. The jury returned a guilty verdict and recommended that defendant be sentenced to death. Defendant contends that the trial court committed reversible error by conducting unrecorded conferences with jurors in the absence of defendant and his attorneys. We agree and hold that defendant is entitled to a new trial. Although defendant brings forth numerous other assignments of error, their resolution is unnecessary to the disposition of this appeal.

A complete presentation of the evidence also is unnecessary to an understanding of the legal issue involved in this case. In summary, the State presented evidence tending to show that on the day of the murder defendant was seen in his car following the victim, who was in her car. Later that day, police found the victim's car abandoned on the side of the road. Defendant's palm print was on the left doorpost of the car. Several days after finding the car, investigators discovered the victim's body in a wooded area just over a mile from the plant where defendant worked. Witnesses for the State testified that defendant carried a twenty-gauge shotgun in the trunk of his car. The victim's autopsy revealed that she died as a result of a gunshot wound to the back of the head. There were thirteen entrance and seven exit wounds in the victim's head and five buckshot-type projectiles were recovered during the autopsy.

On the day of the murder defendant, who later told investigators he did not know the victim, cashed a personal check drawn on the victim's account, made payable to his order, for $126.75. Once paid, this check left a balance of $2.89 in the victim's account. Police seized from defendant's residence a current bank statement showing a zero balance as of the date of the murder, yet witnesses testified that defendant made change for a fifty-dollar bill later that day.

STATE v. MONROE

[330 N.C. 846 (1992)]

Lottie Gamble, acting as a police informant, gained defendant's confidence and testified at trial regarding defendant's statements to her admitting responsibility for killing the victim. Glenn Locklear, who was incarcerated in the same cell as defendant, also testified regarding several incriminating statements by defendant.

Defendant contends the trial court violated his nonwaivable state constitutional right to be present at all stages of his capital trial by conducting unrecorded conferences with jurors at the bench. Our review of the record reveals, and the parties do not contest, that the trial court held at least seven such conferences — three with sitting jurors and four with alternate jurors. On these occasions, immediately following notification by the State and defense counsel that a particular person was acceptable for service on the jury, the court called the juror to the bench for a brief conference.

Article I, Section 23 of the North Carolina Constitution provides for capital defendants a nonwaivable right to be present at all stages of their trials. *See State v. Payne*, 320 N.C. 138, 357 S.E.2d 612 (1987) (hereinafter *Payne I*). "The process of selecting and impaneling the jury is a stage of the trial at which the defendant has a right to be present." *State v. Smith*, 326 N.C. 792, 794, 392 S.E.2d 362, 363 (1990). Thus, defendant's right to be present encompasses the situation here.

Defendant and defense counsel were present in the courtroom while the trial court conducted its off-the-record conferences with jurors, but as in other cases defendant's presence "essentially was negated by the court's cloistered conversations with [the] jurors." *State v. Buchanan*, 330 N.C. 202, 222, 410 S.E.2d 832, 844 (1991) (discussing *State v. Smith*, 326 N.C. 792, 392 S.E.2d 362, and *State v. McCarver*, 329 N.C. 394, 407 S.E.2d 821 (1991) ). The trial court's actions, therefore, were in derogation of defendant's state constitutional rights. Even so, " '[e]very violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of the particular case, . . . where the appellate court can declare a belief that it was harmless beyond a reasonable doubt.' " *Payne I*, 320 N.C. at 140, 357 S.E.2d at 612-13 (quoting *State v. Taylor*, 280 N.C. 273, 280, 185 S.E.2d 677, 682 (1972) ); *see also State v. Huff*, 325 N.C. 1, 33, 381 S.E.2d 635, 653 (1989), *death penalty vacated,* --- U.S. ---, 111 L. Ed. 2d 777 (1990).

Defendant does not contend that harmful error occurred with respect to the alternate jurors who did not participate in the jury

deliberations. As to the other jurors, the State contends that the error was harmless beyond a reasonable doubt, despite the lack of a written transcript of the private conferences, because defendant was not deprived of his opportunity to determine the acceptability of the jurors with whom the court conversed. The State urges that we follow *State v. Payne*, 328 N.C. 377, 402 S.E.2d 582 (1991) (hereinafter *Payne II*), where we said:

Whether this kind of error is harmless depends . . . on whether the questioning of prospective jurors in defendant's absence might have resulted in a jury composed differently from one which defendant might have obtained had he been present and participated in the process. . . . [D]efendant had sufficient opportunity to observe [the jurors'] demeanor and behavior in considering whether to accept or reject them.

*Id.* at 389-90, 402 S.E.2d at 589. Under *Payne II*, the State argues the error here is harmless because when the trial court conducted its conferences defendant already had expressed his satisfaction with every juror who ultimately served on his jury. Thus, under the facts of this case we can be certain that, (1) defendant's opportunity "to observe [the jurors'] demeanor and behavior" was unimpaired, and (2) there is no possibility that defendant's absence from the conferences affected the ultimate composition of his jury.

If *Payne II* controlled the resolution of this case, perhaps we could conclude that the error here was harmless. *Payne II* does not control, however, because that case involved preliminary questioning of prospective jurors by the trial court on the record with defense counsel, but not defendant, present. In *Payne II* the presence of a record allowed the Court to review the proceedings conducted in defendant's absence. *Payne II*, 328 N.C. at 389, 402 S.E.2d at 589. Because there is no record here, *Payne II* is inapposite and *State v. Tate*, 294 N.C. 189, 239 S.E.2d 821 (1978) and *Payne I*, 320 N.C. 138, 357 S.E.2d 612, control.

In *Tate* the Court expressly disapproved the trial court's practice of holding a private discussion with a seated juror when the juror addressed a question to the court. *Tate*, 294 N.C. at 197-98, 239 S.E.2d at 827. Because *Tate* was a second-degree murder case, the error was waivable and the Court overruled defendant's assignment of error on that basis. In *Payne I*, however, the Court held that a capital defendant's nonwaivable right to presence was violated when the trial court addressed the jury in the absence of defendant,

his counsel, and the court reporter. *Payne I*, 320 N.C. 138, 357 S.E.2d 612. There the Court stated: "The State cannot meet its burden of showing that the trial court's error was harmless beyond a reasonable doubt . . . because the defendant, counsel, and the court reporter all were absent during the ensuing admonitions [to the jury]." *Id.* at 140, 357 S.E.2d at 613; *see also State v. Smith*, 326 N.C. 792, 392 S.E.2d 362 (reversible error where trial court excused prospective jurors as result of private, unrecorded bench conferences outside defendant's presence); *State v. McCarver*, 329 N.C. 259, 404 S.E.2d 821 (same).

As in *Payne I*, the State here cannot meet its burden of showing the harmlessness of this constitutional error. The trial court conducted its conferences outside the presence of defendant, his counsel, and the court reporter. The court did not have the benefit of our decisions in *Payne I, Smith* and *McCarver* when this case was tried. The court undoubtedly acted in good faith and intended only to facilitate the administration of the trial, but without a record of what transpired we cannot conclude that the error was harmless.

New trial.