HULSE v. ARROW TRUCKING CO.

[161 N.C. App. 306 (2003)]

WILLIAM F. HULSE, Guardian Ad Litem for IMOGENE FOWLER ECKLIFF and TIMOTHY ECKLIFF, Plaintiffs v. ARROW TRUCKING CO. and THOMAS RAY FINCHER, Defendants

No. COA02-1750

(Filed 18 November 2003)

**Appeal and Error— appealability—order compelling discovery—interlocutory**

> An appeal from a discovery order was dismissed as interlocutory where the order concerned a privileged communication between defendant and his attorney (handwritten interrogatory responses used in drafting a formal response), but defendant waived the privilege by testifying about the handwritten answers in his deposition. No substantial right was affected.

Appeal by defendants from an order entered 1 November 2002 by Judge Kimberly S. Taylor in Iredell County Superior Court. Heard in the Court of Appeals 9 October 2003.

*Knox, Brotherton, Knox & Godfrey, by H. Edward Knox, Lisa G. Godfrey, and Frances S. Knox, for plaintiff-appellees.*

*Davis & Hamrick, L.L.P., by H. Lee Davis, Jr. and Ann C. Rowe, for defendant-appellants.*

HUNTER, Judge.

Thomas Fincher ("defendant Fincher") and Arrow Trucking Company ("defendant Arrow") (collectively "defendants") appeal the trial court's discovery order compelling the production of certain handwritten interrogatory responses. Defendants have failed to demonstrate that a substantial right will be affected should they not be given the immediate right to appeal. Therefore, we dismiss defendants' appeal as interlocutory.

On 21 May 2001, defendant Fincher was driving one of defendant Arrow's tractor-trailers when he pulled out from a service station and collided with a vehicle driven by Imogene Eckliff ("Eckliff"). As a result of the collision, Eckliff suffered severe injuries and was ultimately adjudicated incompetent. Thereafter, William F. Hulse, a guardian *ad litem* acting on behalf of Eckliff and her husband, Timothy Eckliff (collectively "plaintiffs"), filed a negligence action against defendants on 14 June 2001. Defendants answered denying

negligence and, alternatively, alleged Eckliff's contributory negligence as a defense.

Plaintiffs began discovery by serving "Plaintiff's First Set of Interrogatories and Request for Production of Documents" on defendants. On 14 November 2001, defense counsel served on plaintiffs' counsel a document entitled "Defendant, Thomas Ray Fincher's, Answers to Plaintiffs' First Set of Interrogatories and Request for Production of Documents." The document contained defendant Fincher's typed interrogatory responses, two of which were as follows:

> 31. When you first saw the Plaintiff's vehicle, state the location of all vehicles involved in the occurrence with relation to the location of the accident, the distance between your vehicle and the Plaintiff's vehicle, and the speed of each vehicle.

> **ANSWER:** The investigating officer estimated the original speed of travel for the Defendant as 0 mph. The investigating officer estimated the original speed of travel for the Plaintiff as 50 mph. The estimated speed at impact for the Defendant was 10 mph. The estimated speed at impact for the Plaintiff was 40 mph. My truck was in the inside eastbound lane of travel. The Plaintiff's car was on the other side of [the] trailer.

> 32. Please describe, with as much specificity as possible, how you contend the collision occurred. Include in your answer the speed, direction and location of each vehicle involved in the occurrence and what actions you took to avoid the occurrence.

> **ANSWER:** Objection. The Defendant objects to this Interrogatory as vague, overly broad, unduly burdensome and not calculated to lead to the discovery of admissible or relevant evidence. Without waiving such objection, the Defendant states that he was traveling at 10-15 mph in a straight line. Upon information and belief the Plaintiff was traveling at an unsafe speed, without keeping a proper lookout and without keeping her vehicle under control and collided with my trailer.

Subsequently, defendant Fincher signed a verification stating that he had sworn, under oath:

> That he is a Defendant in the . . . action; that he has read the foregoing [Interrogatories and responses] and knows the contents thereof, that the same are true of his own knowledge except

those matters therein stated upon information and belief, and as to those he believes them to be true.

The verification was sent by defense counsel several days after the responses on 20 November 2001 to be attached to the typed interrogatory responses.

During a deposition held on 24 July 2002, defendant Fincher was asked about his interrogatory responses. Defendant Fincher testified that defense counsel had sent the interrogatories to him in Texas, where he is a citizen and resident. In turn, he hand-wrote responses to the interrogatories and sent them back to defense counsel by facsimile. Defendant Fincher did not receive back from his counsel any typed version of his responses, but he did receive a typed verification which he signed in the presence of a notary and sent back to defense counsel based on his handwritten responses. Defendant Fincher revealed that he had not seen the typed interrogatory responses until the night before his deposition.

Also, defendant Fincher was asked specifically about the typed response to Interrogatory Number 31 regarding the investigating officer's estimate of the Eckliff vehicle's original speed of travel as fifty miles per hour. Defendant Fincher testified that the response was "not [his] answer" because (1) he never told the officer what he believed the speed of the Eckliff vehicle to be prior to the collision, and (2) he had handwritten that the vehicle's speed was "[f]ifty-five plus." "That was wrote on my Interrogatories that I faxed back[]" to defense counsel. Thereafter, the parties learned that a paralegal for defense counsel had incorrectly recorded defendant's handwritten response to Interrogatory Number 31 on the typed version of discovery.

Following the deposition, plaintiffs formally requested defendant Fincher's handwritten interrogatory responses as a part of "Plaintiff's Second Request for Production of Documents." Defendants responded and objected to plaintiffs' request in that it sought "information protected by the attorney-client privilege and the attorney work product doctrine and [sought] documents which were prepared in anticipation of litigation." Plaintiffs, in turn, filed a motion to compel defendants to provide them with the handwritten responses.

The motion to compel was heard over the course of three trial court appearances on 14, 24, and 30 October 2002. After conducting an *in camera* review, the trial court ordered that the handwritten

HULSE v. ARROW TRUCKING CO.

[161 N.C. App. 306 (2003)]

responses to Interrogatories Number 31 and Number 32 be provided directly to counsel for plaintiffs for the following reasons:

    (2)  Defendant Thomas Ray Fincher waived his right to claim the attorney-client privilege with respect to his handwritten responses to Interrogatories Nos. 31 and 32 when he testified in his deposition that the typewritten responses to which his verification was attached had, in fact, never been reviewed by him and did not reflect his handwritten responses to Interrogatories Nos. 31 and 32.

    (3)  Because of Thomas Ray Fincher's testimony in his deposition that his verified discovery responses did not reflect his true answers, the Plaintiffs do have a "substantial need" for the handwritten document, and there is no alternative means for the Plaintiffs to obtain this document other than from the Defendants.

Defendants appeal.

Plaintiffs have filed a motion to dismiss defendants' appeal of the discovery order as interlocutory and not affecting a substantial right. Generally, "there is no right to appeal from an interlocutory order[,]" and "appellate courts do not review discovery orders because of their interlocutory nature." *Stevenson v. Joyner*, 148 N.C. App. 261, 262-63, 558 S.E.2d 215, 217 (2002). However, an interlocutory order may be immediately appealed where delaying the appeal will irreparably impair a substantial right of the party. *See Moose v. Nissan of Statesville*, 115 N.C. App. 423, 444 S.E.2d 694 (1994). Here, defendants argue the trial court's discovery order is immediately appealable because defendant Fincher's handwritten interrogatory responses are protected by the attorney-client privilege. Plaintiffs argue defendants failed to prove an attorney-client privilege existed as to those responses and, assuming they did, any right to claim the privilege was waived when defendant Fincher testified under oath regarding the contents of the responses. We agree with plaintiffs.[1]

"It is well settled that communications between an attorney and a client are privileged under proper circumstances." *State v. Bronson*, 333 N.C. 67, 76, 423 S.E.2d 772, 777 (1992) (citation omitted).

---

1. In their appellate briefs, neither party acknowledges that the trial court's order also compelled discovery of the two handwritten interrogatory responses due to plaintiff's "substantial need" thereby concluding the responses were not protected under the work product doctrine. However, while defendants' appeal could be dismissed as interlocutory on that basis, we do so only on the basis presented to this Court.

"Although an attorney may assert the privilege when necessary to protect the interests of the client, the privilege belongs solely to the client." *In re Miller*, 357 N.C. 316, 338-39, 584 S.E.2d 772, 788 (2003). The client/claimant of the attorney-client privilege bears the burden of establishing that the privilege exists. *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 32, 541 S.E.2d 782, 791, *cert. denied and disc. review dismissed as moot*, 353 N.C. 371, 547 S.E.2d 809 (2001). Such a burden can be met by establishing:

> (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose, although litigation need not be contemplated, and (5) the client has not waived the privilege.

*Id.* (citations omitted).

At the time plaintiffs' interrogatories were served on defendants in the case *sub judice*, an attorney-client relationship already existed between defendant Fincher and defense counsel. Defendant Fincher confidentially consulted defense counsel regarding the interrogatories, which related to events surrounding his collision with Eckliff. Since defendant Fincher is a resident and citizen of Texas, defense counsel obtained defendant Fincher's handwritten responses to the interrogatories by facsimile. Those handwritten responses were used in the course of preparing formal responses to plaintiffs' interrogatories. However, while the evidence strongly indicates that defendants met the burden of establishing that the first four elements necessary to prove an attorney-client privilege existed, defendant Fincher clearly waived that privilege with respect to the two handwritten responses in question.

In *State v. Tate*, 294 N.C. 189, 239 S.E.2d 821 (1978), our Supreme Court held that the attorney-client privilege which preserves the confidentiality of a normally privileged written communication is deemed to be waived if the holder of that privilege testifies concerning the written communication thereby putting it into evidence before the jury. The Court reasoned that the written communication itself "is the *best evidence* of what it does and does not contain." *Id.* at 194, 239 S.E.2d at 825 (emphasis added and omitted). During his deposition, plaintiffs' counsel questioned defendant Fincher about the typed response to Interrogatory Number 31, to which defendant Fincher

testified: "That [wa]s not my answer. . . . I wrote that the speed of the vehicle was traveling above the speed limit [fifty-five plus]." That testimony alone, offered by the client/claimant of the privilege, put the contents of the interrogatory responses into evidence by identifying obvious differences between the handwritten and typed responses. The trial court's subsequent decision to compel discovery of defendant Fincher's handwritten responses only as to Interrogatories Number 31 and Number 32 (after reviewing all the handwritten responses *in camera*), provides the best evidence of defendant Fincher's intended responses to those interrogatories. Thus, while the evidence indicates that defendant Fincher's handwritten responses were privileged, his waiver of that privilege resulted in those interrogatory responses being discoverable.

Accordingly, plaintiffs' "Motion to Dismiss Appeal as Interlocutory and Not Affecting a Substantial Right" is granted.

Appeal dismissed.

Judges McGEE and CALABRIA concur.