**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4033

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERNEST JAMES HOLLAND, III,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever III, Chief District Judge.  (5:16-cr-00023-D-1)

Submitted:  August 31, 2018                     Decided:  September 13, 2018

Before DIAZ and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

G. Alan DuBois, Federal Public Defender, Jennifer C. Leisten, Research & Writing Attorney, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, G. Norman Acker, III, First Assistant United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Phillip A. Rubin, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ernest James Holland, III, pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e) (2012). He reserved the right to appeal the district court's denial of his motion to suppress evidence and any sentence in excess of the advisory Sentencing Guidelines range. At sentencing, the district court determined that Holland had three qualifying violent felonies under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (2012) ("ACCA") and sentenced Holland to the mandatory minimum sentence of 15 years of imprisonment. On appeal, Holland argues that the court erred in denying his motion to suppress the firearm that he threw to the ground while fleeing after encountering and speaking to a police officer. Holland also argues that his North Carolina conviction for attempted assault with a deadly weapon with intent to kill ("AWDWIK") is not a qualifying offense under the force clause of the ACCA. Finding no error, we affirm.

Holland first contends that he was seized in violation of the Fourth Amendment when Sergeant Boyce questioned him on Blount Street because no reasonable person would have felt free to disregard the officers and walk away under the totality of the circumstances. He further contests the Government's assertion that, even if it were an investigative stop, the police officers had reasonable suspicion to detain Holland. The Government counters that the stop was a consensual encounter; nonetheless, they had reasonable suspicion to detain Holland for illegal possession of a firearm; Holland abandoned the gun in a manner that permitted admission of it as evidence; and last,

2

Holland committed an intervening crime, littering, that made the introduction of the firearm permissible.

"In reviewing a district court's ruling on a motion to suppress, this court reviews conclusions of law de novo and underlying factual findings for clear error." *United States v. Clarke*, 842 F.3d 288, 293 (4th Cir. 2016) (brackets and internal quotation marks omitted). "Because the district court denied Defendant's motion to suppress, [this court] construe[s] the evidence in the light most favorable to the government." *Id.* (internal quotation marks omitted). "[N]ot every encounter between a police officer and a citizen is an intrusion requiring an objective justification." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). The court must first decide if and when the individual was "seized" for purposes of the Fourth Amendment. *See United States v. Wilson*, 953 F.2d 116, 120 (4th Cir. 1991).

An unconstitutional seizure occurs when a police "officer, by means of physical force or show of authority, terminates or restrains [an individual's] freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks omitted); *see Mendenhall*, 446 U.S. at 554 (holding that a seizure occurs when, under all the circumstances surrounding the encounter, a reasonable person would have believed that he was not free to leave). The Supreme Court has identified a number of factors that must be considered in determining whether an encounter with the police is consensual. These include: (i) the number of police officers present at the scene; (ii) whether the police officers were in uniform; (iii) whether the police officers displayed their weapons; (iv) whether they "touched the defendant or made any attempt to physically block his

3

departure or restrain his movement"; (v) "the use of language or tone of voice indicating that compliance with the officer's request might be compelled"; (vi) whether the officers informed the defendant that they suspected him of "illegal activity rather than treating the encounter as 'routine' in nature"; and (vii) "whether, if the officer requested from the defendant . . . some form of official identification, the officer promptly returned it." *Mendenhall*, 446 U.S. at 554.

This inquiry is objective, *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002), asking whether "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *United States v. Jones*, 678 F.3d 293, 299 (4th Cir. 2012) (quoting *Mendenhall*, 446 U.S. at 553). An encounter generally remains consensual when, for example, police officers engage an individual in routine questioning in a public place. *United States v. Gray*, 883 F.2d 320, 323 (1989); *see also Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[M]ere police questioning does not constitute a seizure."). In determining whether an encounter is consensual, the court considers "the time, place, and purpose" of an encounter. *Weaver*, 282 F.3d at 310.

Here, the district court considered each of these factors and determined that the encounter between Holland and the officers was consensual. First, while there were four officers in the transit plaza area, only Sergeant Boyce spoke with Holland. Officer Wescoe was approximately 15 feet away in plain clothes but wearing a badge on his belt, however, there was no evidence that Holland saw Wescoe's badge or noticed Wescoe himself. Wescoe did not approach Holland. Most of the officers were in uniform but did

4

not display their weapons. Additionally, Boyce did not touch Holland and did not block his departure or restrain his movement. Moreover, the district court specifically found that "the tone and language of Sergeant Boyce was courteous and not indicative that compliance with the officer's request might be compelled if Mr. Holland did not respond." (J.A. 333). Law enforcement officers "do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place by asking him if he is willing to answer some questions, by putting questions to him if he is willing to listen . . . nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification." *Florida v. Royer*, 460 U.S. 491, 497 (1983). The court also observed the setting of the encounter and noted that it was a public space and that Holland voluntarily entered the area and did not enter in response to any directive by the officers.

Below and on appeal, Holland challenged whether the encounter was consensual on the basis that Officer Wescoe's report described the incident as an investigative detention. The district court addressed Holland's argument that the encounter was intended as a seizure because Officer Wescoe's report describing the incident stated "an investigative detention was performed on a known armed gang member." An officer's characterization of an incident or encounter, standing alone, is not enough to implicate the Fourth Amendment. *See Michigan v. Chesternut*, 486 U.S. 567, 574 (1988). Further, the majority of Wescoe's report does not support that the interaction involved an investigative detention resulting in a seizure by Sergeant Boyce.

5

We have considered the factors listed in *Mendenhall* and conclude that the interaction between Holland and Boyce was not a seizure, but rather a consensual encounter that does not "trigger Fourth Amendment scrutiny." *Bostick*, 501 U.S. at 439 ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."). Because this court "may affirm on any grounds apparent from the record" *United States v. Riley*, 856 F.3d 326, 328 (4th Cir. 2017) (internal quotation marks omitted), we need not address the alternate bases to justify denying the motion to suppress the firearm Holland abandoned after the encounter.

Next, Holland argues that attempted AWDWIK does not have as an element the use, attempted use, or threatened use of force against another person. Under the ACCA, a defendant convicted of violating 18 U.S.C. § 922(g)(1) is subject to a statutory minimum sentence of 15 years of imprisonment if he has sustained 3 prior convictions for either violent felonies or serious drug offenses committed on occasions different from one another. 18 U.S.C. § 924(e). A violent felony is an offense that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The first clause is known as the "force clause" and the second clause consists of several enumerated crimes, as well as a "residual" or "otherwise" clause. *See United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016) (internal quotation marks omitted).

6

In *Johnson v. United States*, 135 S. Ct. 2551, 2556-63 (2015), the Supreme Court determined that the residual clause of the definition of a violent felony is unconstitutionally vague. Therefore, in order for a prior conviction to qualify as a violent felony under the ACCA following *Johnson*, it must qualify either under the enumerated offense clause or under the force clause. We review de novo whether a prior conviction qualifies as a violent felony under the ACCA. *United States v. Hemingway*, 734 F.3d 323, 331 (4th Cir. 2013).

The elements of AWDWIK are: "(1) an assault; (2) with a deadly weapon; (3) with the intent to kill." *State v. Garris*, 663 S.E.2d 340, 349 (N.C. 2008) (internal quotation marks omitted); *see also* N.C. Gen. Stat. § 14-32(c) (2015). North Carolina courts have consistently observed that AWDWIK "has, as an element, specific intent to kill." *State v. Coble*, 527 S.E.2d 45, 49 (N.C. 2000).

We recently held that assault with a deadly weapon with intent to kill inflicting serious bodily injury ("AWDWIKISI") under North Carolina law is categorically a violent felony under the ACCA. *United States v. Townsend*, 886 F.3d 441, 448 (4th Cir. 2018). We noted that the "[u]se of force" under the force clause of the ACCA "means to act with a mens rea more culpable than negligence or recklessness." *Id.* at 444-45. Under North Carolina law, the elements of AWDWIKISI include: "(1) an assault, (2) with the use of a deadly weapon, (3) with an intent to kill, and (4) inflicting serious injury, not resulting in death." *State v. Tirado*, 599 S.E.2d 515, 534 (N.C. 2004). In determining that proving the intent to kill under the statute requires proving a mens rea greater than negligence or recklessness, we noted that "the intent to kill element of

7

AWDWIKISI requires proof of a specific intent to kill." *Townsend*, 886 F.3d at 445; *see also State v. Tate*, 239 S.E.2d 821, 826 (N.C. 1978) (AWDWIKISI requires proof of a specific intent). This court thus expressly rejected Townsend's argument that AWDWIKISI requires merely culpable negligence. *Townsend*, 886 F.3d at 446-48.

Given our rejection of the argument that Holland uses to assert that his AWDWIK conviction is no longer a violent felony, the decision in *Townsend* controls and AWDWIK remains a violent felony after *Johnson*. However, Holland's contested conviction is for *attempted* AWDWIK. Attempted use of violent force also qualifies under the force clause of the ACCA. *See* 18 U.S.C. § 924(e)(2)(B). In North Carolina, attempt requires "(1)[a]n intent to commit [the crime], and (2) an overt act done for that purpose, going beyond mere preparation, but falling short of the completed offense." *State v. Floyd*, 794 S.E.2d 460, 463 (N.C. 2016). To satisfy the overt act requirement, the act must be substantial and approximate an act that "in the ordinary course of things would result in the commission of the crime. *State v. Miller*, 477 S.E.2d 915, 921 (N.C. 1996) (internal quotation and citation omitted). Therefore, a person who is attempting to assault another with a deadly weapon and kill that person is attempting to use the force necessary to commit the crime. Several circuits have held that attempting to commit a substantive offense that qualifies as a violent felony also constitutes a qualifying violent felony. *See, e.g.*, *Hill v. United* States, 877 F.3d 717, 719-20 (7th Cir. 2017) (ACCA); *United States v. St. Hubert*, 883 F.3d 1319, 1334 (11th Cir. 2018) (18 U.S.C. § 924(c)(3)(A) (2012)). Therefore, the district court did not err in concluding that attempted AWDWIK is a crime of violence under the ACCA.

8

Accordingly, we affirm the criminal judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*