STATE OF NORTH CAROLINA v. ROY EVERETT BRUCE

No. 591A84

(Filed 10 December 1985)

1. **Bills of Discovery § 6; Constitutional Law § 30— circumstances surrounding statements not discoverable**

   Defendant was not entitled to have the trial court order the prosecutor to provide him with a description of the facts and circumstances surrounding statements made by defendant. N.C.G.S. 15A-903.

2. **Bills of Discovery § 6; Constitutional Law § 30— list of witnesses not discoverable**

   The trial court properly denied the part of defendant's discovery motion seeking to have the prosecutor ordered to disclose the "names of all persons known by the State to have information regarding the above-captioned matter and/or all persons interviewed regarding the matter" since this amounted to a request for a list of the State's witnesses and others having knowledge of the cases against defendant, and such information is not discoverable.

3. **Bills of Discovery § 6; Constitutional Law § 30— notes of investigating officers —discovery properly denied**

   The trial court properly denied defendant's motion to discover "any notes taken or reports made by investigating officers which would tend to exculpate the defendant, mitigate the degree of the offense, or contradict other evidence presented by the State" where the State had specifically indicated that it would comply fully with the requirements of *Brady v. Maryland*, 373 U.S. 83, giving the defense the right, upon specific request, to obtain evidence in the prosecutor's possession which is material to guilt or punishment and favorable to the accused, since defendant's motion sought "work product" not subject to discovery to the extent that it sought information beyond what the State was required to disclose under *Brady*.

4. **Bills of Discovery § 6; Constitutional Law § 30— criminal records of witnesses not discoverable**

   The criminal records of prospective witnesses were not subject to discovery.

**5. Criminal Law § 105.1— effect of offering evidence after motion to dismiss**

  Where defendant offered evidence following the trial court's denial of his motion for dismissal at the close of the State's evidence, the trial court's denial of that motion was not properly before the appellate court for review.

**6. Incest § 1; Rape and Allied Offenses § 5— sufficient evidence of penetration**

  The State introduced sufficient evidence of penetration to permit a rational trier of fact to find beyond a reasonable doubt that defendant committed the offenses of incest with and rape of his daughter where the child victim testified at trial that defendant had penetrated her. Discrepancies in the State's evidence concerning penetration were for the jury to resolve and did not warrant dismissal of the charges against defendant.

**7. Criminal Law § 162— waiver of objection to evidence**

  Defendant waived his objection to testimony when testimony of a similar character was admitted without objection.

**8. Criminal Law § 102.3— improper jury argument cured by instruction**

  In a prosecution for incest with and rape of defendant's nine-year-old daughter, possible prejudice from the prosecutor's reference to defendant's other daughter in a statement in the jury argument concerning "the life of another little girl" was removed by the court's curative instruction that the jury should not consider what might possibly happen in the future.

**9. Criminal Law § 102.6— prosecutor's jury argument—oath to uphold Constitution**

  The trial court did not abuse its discretion in overruling defendant's objection to a remark by the prosecutor that she "took an oath of office to uphold the Constitution" since the remark, although not supported by the evidence, was relatively innocuous and did not rise to the level of gross impropriety.

APPEAL by the defendant from judgments entered on July 10, 1984, by *Judge Robert D. Lewis*, in Superior Court, BUNCOMBE County. Heard in the Supreme Court September 12, 1985.

  *Lacy H. Thornburg, Attorney General, by Clifton H. Duke, Assistant Attorney General, for the State.*

  *John Byrd, Assistant Public Defender, for the defendant-appellant.*

MITCHELL, Justice.

  The defendant was convicted upon proper indictments for three counts of taking indecent liberties with a child, one count of first degree rape, and one count of incest. The trial court dismissed other charges against him at the close of the State's evi-

dence. The defendant was sentenced to life in prison for first degree rape, and on two of the indecent liberties convictions he was sentenced to separate prison terms of three years each. The trial court treated the third indecent liberties count as having merged into the rape conviction and arrested judgment on that indecent liberties count. A sentence of four years and six months was entered for incest.

The defendant gave notice of appeal of all convictions to the Appellate Division. The defendant's conviction for first degree rape came before this Court as a matter of right because a life sentence was imposed. The defendant's motion to bypass the Court of Appeals as to all remaining convictions was allowed by this Court on October 24, 1985.

By his assignments, the defendant contends that the trial court made several errors. He contends that the trial court erred by denying various portions of his discovery motion. Second, he says that the trial court erred by denying his motions to dismiss all charges because the evidence was insufficient to carry them to the jury. Third, he asserts that the trial court erred by allowing a witness to answer a question that assumed facts not in evidence. Finally, he contends that the trial court erred by denying his motion for mistrial on the ground that the prosecutor's closing argument was improper. We find no error.

The State's evidence tended to show that at the time of the trial the defendant Roy Everett Bruce was thirty-nine years old. The victim is the defendant's daughter and was ten years old at the time of trial. The defendant also has a son and a two-year-old daughter. The defendant and his second wife Debra had custody of all three children prior to the events leading to his convictions.

The child victim testified that before Christmas 1983 she was in her room doing a math problem. The defendant came in to help her. He took his "part" out and told her to touch it, but she refused. He then unzipped her pants and tried to touch her between her legs. On a second occasion she went into her father's room where he laid her on his bed on a towel, removed her pants and panties, got on top of her and put his penis inside her vagina "halfway, not all the way." He did this once and then rubbed vaseline on her. On another occasion her father entered her bed-

room at night and raised her nightgown and rubbed her between her legs.

She testified on cross-examination that on one occasion in the past she had been told by her "real mother" to say that the defendant had tried to put his hands between her legs so that he would be "sent to jail." She said that prior to October, 1983, she had lied in this fashion but had later admitted the lie to her stepmother. In the past she had lived with her "real mother" and had been beaten by her mother's boyfriend and locked in a closet. She said that she had received treatment at a mental health facility prior to October, 1983. Mary Young and Dianne Livingstone, the child's school teachers, gave testimony tending to corroborate that of the child.

Marianna Williams, a social worker, testified that she had worked with the Bruce family since June, 1982. She interviewed the child with regard to the rape charge. The child said that her father had held her down and removed her "britches" and "stuck his thing up in me and kept doing it," and said that he would "whip my ass if I told Mama." The child also said that on a prior date her father had taken her pants down, rubbed her and exposed himself to her.

Cynthia Van Deusen, a public health nurse, testified that she examined the child's vagina on October 17, 1983, and found "a little bit of redness, but not a marked amount." Otherwise, she testified to nothing abnormal. During the examination the child said that her father had unzipped her pants and rubbed her genital area.

Cynthia McCants, a social worker, testified that the child told her about three occasions of misconduct. The child said that her father tried to touch her on two occasions, and on the third, he raped her.

Beverly Smith, a public health nurse, testified that she examined the child on November 3, 1983, and found that her external genitalia were very red and irritated. Mrs. Smith observed a white discharge, and she was able to insert her index finger into the vagina up to the second joint, past the hymen. This examination took place four to five days after the alleged rape.

Dr. Mary Helen McConnell, a pediatrician, examined the child on November 29, 1983, twelve days after the alleged rape and two weeks before the examination by the defendant's medical expert, Dr. Catherine Wilson. Dr. McConnell testified that the child's vaginal opening was red, inflamed and tender. She also testified that this condition was caused by an irritating object that had been rubbed in that area, and it could have been a male penis.

Jeanne Myers, a social worker, testified that the child was in her group for sexually abused children following November 23, 1983. She was qualified as an expert in the area of sexual abuse and opined that the child's behavior was typical of a sexually abused child.

The defendant also introduced evidence. Dr. Catherine Wilson testified for the defense that she specializes in obstetrics and gynecology. Acting under a court order, she examined the child on December 12, 1983. Dr. Wilson found no evidence of recent or previous trauma to the child's vagina. Dr. Wilson was of the opinion that intromission had not occurred and defined intromission as "the insertion of the penis into the vagina beyond the hymen." On cross-examination Dr. Wilson stated that slight penetration of the child's vagina would be consistent with a lack of intromission.

David Evers, a psychologist, testified that he examined the child in December, 1981. He diagnosed her as suffering from "an adjustment reaction with mixed emotional features." He stated that she had been in a very chaotic home situation and under a lot of stress and that she was showing the results. She was quite anxious, chewed her nails, and had difficulty sleeping.

Becky Angel, a social worker, testified that she first worked with the child in 1981 when the child lived with her mother and Richard Johnson, the mother's boyfriend. The child had been beaten by the boyfriend and was very nervous.

Gerald H. Lambert, a detective with the Asheville Police Department, testified that he began an investigation of the case in December, 1983. He interviewed the child, and she told of two separate occasions of sexually abusive treatment by the defendant which occurred in October and November, 1983.

Gary Cash, an attorney, testified that he heard the child's testimony in juvenile court in January, 1984. She testified there

to three occasions of sexual misconduct on the part of her father. One involved sexual intercourse and two involved indecent liberties.

Wayne Dickens, investigator for the Public Defender's Office, testified that he, John Byrd, and Shirley Brown interviewed the child on February 15, 1984. A tape recording of the interview was offered by the defendant as a prior inconsistent statement of the child. During the interview she told of two rapes and two occasions of indecent liberties.

The defendant testified and denied ever having or attempting to have sexual intercourse with his daughter. He denied ever making any sexual advances toward her.

In his first two assignments of error, the defendant contends the trial court erred by denying various parts of his discovery motion. By his motion the defendant sought *inter alia* to have the trial court order the State to disclose the "facts and circumstances surrounding any . . . statement made by the defendant . . . ." Marianna Williams, a witness for the State, testified during trial that the defendant had "agreed to go to counseling, to make no advances toward" the child "of a sexual nature, and to avoid situations in which there might be a temptation to do this." She testified that the defendant agreed to this by signing a written contract with the Buncombe County Health Department containing those specific terms. This contract was entered into during an interview held to determine whether there had been any kind of sexual contact between the defendant and the child.

[1] The defendant contends that he was prevented from filing a motion under N.C.G.S. 15A-977 to suppress the statements in the contract because the trial court denied the part of his discovery motion seeking disclosure of the "facts and circumstances surrounding any . . . statement made by the defendant . . . ." We find no merit in this contention.

N.C.G.S. 15A-903 requires the trial court to order the prosecutor to disclose certain statements made by the defendant and in the possession, custody or control of the prosecutor. Nothing in the statute, however, entitles a defendant to have the trial court order the prosecutor to provide him with a description of the "facts and circumstances surrounding his statements."

[2]   The defendant also assigns as error the trial court's denial of the part of his discovery motion seeking to have the prosecutor ordered to disclose the "names of all persons known by the State to have information regarding the above-captioned matter and/or all persons interviewed regarding the matter." This amounted to a request for a list of the State's witnesses and others having knowledge of the cases against the defendant. As we have previously pointed out, such information simply is not discoverable. *State v. Alston*, 307 N.C. 321, 335-36, 298 S.E. 2d 631, 641 (1983). Further, we find no indication in the record on appeal that the denial of this part of the defendant's motion in any way encouraged or permitted the prosecutor to ignore the dictates of *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194 (1963).

[3]   The defendant additionally sought by his motion to discover "[a]ny notes taken or reports made by investigating officers which would tend to exculpate the defendant, mitigate the degree of the offense, or contradict other evidence to be presented by the State." This request for information was properly denied by the trial court. The State had specifically indicated that it would comply fully with the requirements of *Brady*, which gives the defense, upon specific request, the right to obtain evidence in the prosecutor's possession which is material to guilt or to punishment and favorable to the accused. To the extent this part of the defendant's discovery motion sought information beyond that the State was required to disclose under *Brady*, it sought "work product" not subject to discovery. *Alston*, 307 N.C. at 336, 298 S.E. 2d at 642.

[4]   The defendant also contends that the trial court erred by denying a part of his discovery motion seeking a "copy of any prior criminal record of any State witness or prospective witness, and any additional information which could reflect on the credibility of such witnesses . . . ." Such information is not subject to discovery. *State v. Brown*, 306 N.C. 151, 176, 293 S.E. 2d 569, 585, *cert. denied*, 459 U.S. 1080 (1982).

The defendant further contends that the trial court erred by denying his motion to discover the circumstances surrounding certain oral statements made by him which were disclosed to him by the State prior to trial and were used against him at trial. The statements provided to the defendant prior to trial were: "I

haven't sexually bothered [the child] since I signed this contract."
"I haven't sexually abused [her] at all." "Is [she] still in therapy?"

N.C.G.S. 15A-903(a)(2) requires the trial court, upon motion by
the defendant, to order the prosecutor to disclose "the substance
of any oral statement" by the defendant. As used in the statute,
"substance" means: "Essence; the material or essential part of a
thing, as distinguished from 'form.' That which is essential."
Black's Law Dictionary 1280 (rev. 5th ed. 1979). Prior to trial in
the present case, the State fully divulged the substance of the
oral statements in question. The trial court did not err in refusing
to require the State to attempt to describe the circumstances sur-
rounding the making of those statements.

The defendant next assigns as error the trial court's denial of
his motions to dismiss all charges at the close of the State's evi-
dence and at the close of all of the evidence. He contends in this
regard that the State's evidence was contradictory and insuffi-
cient to prove penetration beyond a reasonable doubt. Since
penetration is not an element of the offense of taking indecent
liberties with a child, we treat the defendant's contentions in this
regard as relating only to his convictions for incest and first
degree rape.

[5]   A defendant's motion to dismiss under N.C.G.S. 15A-1227(a)(1)
for insufficiency of the evidence to go to the jury is tantamount to
a motion for nonsuit under N.C.G.S. 15-173. *State v. Greer*, 308
N.C. 515, 519, 302 S.E. 2d 774, 777 (1983); *State v. Earnhardt*, 307
N.C. 62, 65, 296 S.E. 2d 649, 651 (1982). Under N.C.G.S. 15-173, "[i]f
the defendant introduces evidence," following the denial of his
motion for nonsuit, "he thereby waives any motion for ·dismissal
or judgment as in case of nonsuit which he may have made prior
to the introduction of his evidence and cannot urge such prior mo-
tion as ground for appeal." *See State v. Leonard*, 300 N.C. 223,
231, 266 S.E. 2d 631, 636, *cert. denied*, 449 U.S. 960 (1980). Because
the defendant offered evidence following the trial court's denial of
his motion for dismissal at the close of the State's evidence, the
trial court's denial of that motion is not properly before us for
review.

We turn, then, to the defendant's contention that the failure
of the State to establish penetration required the trial court to
allow his motion to dismiss at the close of all of the evidence.

When a defendant moves under N.C.G.S. 15A-1227(a)(2) or under N.C.G.S. 15-173 for dismissal at the close of all of the evidence, "the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of the defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E. 2d 649, 651-52 (1982). The trial court is to view all of the evidence in the light most favorable to the State and give the State all reasonable inferences that may be drawn from the evidence supporting the charges against the defendant. *State v. Powell*, 299 N.C. 95, 261 S.E. 2d 114 (1980). The trial court must determine as a matter of law whether the State has offered "substantial evidence of all elements of the offense charged so any rational trier of fact *could* find beyond a reasonable doubt that the defendant committed the offense." *State v. Thompson*, 306 N.C. 526, 532, 294 S.E. 2d 314, 318 (1982).

**[6]**   Applying the foregoing principles, we conclude that the State introduced sufficient evidence of penetration to permit a rational trier of fact to find beyond a reasonable doubt that the defendant committed the offenses of incest and rape. The child victim testified at trial that her father had penetrated her. Although there were discrepancies in her extrajudicial statements to others and in her trial testimony with regard to the manner, extent and frequency of the penetration of her vagina by her father's penis, she clearly testified that he had penetrated her. No more was required to permit the jury to find beyond a reasonable doubt that the penetration\had in fact occurred.

The defendant's contention that his motion to dismiss should have been allowed because of discrepancies in the State's evidence concerning penetration and other crucial questions of fact is without merit. Contradictions and discrepancies in the evidence are for the jury to resolve and do not warrant dismissal. *State v. Powell*, 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980). Further, "[t]he trial court is *not* required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss." *Id.* at 101, 261 S.E. 2d at 118.

The general rule is that "[t]he slightest penetration of the sexual organ of the female by the sexual organ of the male

amounts to carnal knowledge in a legal sense." *State v. Sneeden,* 274 N.C. 498, 501, 164 S.E. 2d 190, 193 (1968). The evidence in this case was sufficient to support a finding beyond a reasonable doubt of such penetration. Therefore, the evidence was sufficient to support the jury in finding the existence of this element during its consideration of the cases against the defendant for incest and first degree rape.

[7] The defendant also assigns as error the trial court's ruling allowing the prosecutor to ask Dr. Wilson, a witness for the defendant, a hypothetical question that the defendant contends assumed facts not yet in evidence. On cross-examination of Dr. Wilson the record reflects the following:

Q. What if there had been penetration, say, of about half an inch or an inch of the male's penis into the child's vagina?

MR. BYRD: Objection.

COURT: I don't know what the question is yet.

Q. If the allegations were that the penis was placed just a half an inch or an inch into the vagina, would that be consistent with your findings?

MR. BYRD: Objection.

COURT: Overruled.

EXCEPTION NO. 11

A. The penis, as one knows, is rounded on the end and not a blunt end, and it might have gone a millimeter or two, but it could not go—Such as ice cream, a ball of ice cream sitting on a cone, it may protrude slightly into the cone, but the larger ball of ice cream cannot go through that cone without melting—

Even if it is assumed *arguendo* that a proper hypothetical question was necessary and that the question asked assumed facts not in evidence, the defendant is entitled to no relief. This Court said in *State v. Campbell,* 296 N.C. 394, 399, 250 S.E. 2d 228, 231 (1979) that: "It is well established that the admission of evidence without objection waives prior or subsequent objection to the admission of evidence of a similar character." After the admission into evidence of the testimony objected to, the State,

without objection by the defendant, asked the following question: "Dr. Wilson, if a male penis had touched the opening and slipped inside, is it your testimony that it could have gone perhaps one millimeter or two millimeters and still be consistent with your findings? Was that your testimony?" The witness answered, without objection, that: "The rounded end might have, but the hymen itself was not penetrated." This testimony is certainly similar in character to the testimony that the defendant objected to and now assigns as error. Since the defendant waived his prior objection, this assignment is without merit.

The defendant next assigns as error the trial court's denial of his motion for mistrial on the grounds that the prosecutor's closing argument was grossly improper and prejudicial. This argument is without merit.

Trial counsel should be given wide latitude to argue to the jury all of the law and the facts presented by the evidence and all reasonable inferences therefrom. *State v. McCall*, 289 N.C. 512, 223 S.E. 2d 303, *death sentence vacated*, 429 U.S. 912 (1976). But counsel may not travel outside of the record and argue facts not supported by the evidence. *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975).

[8] During her closing argument to the jury, the prosecutor said: "We are not talking about just that man's life. We are talking about the life of a nine-year-old child and possibly about the life of another little girl." The defendant's objection was sustained "as to 'possibly.'" At the defendant's request, the trial court then instructed the jury: "Yes, you are not to consider what might possibly happen in the future members of the jury at any point in your deliberations."

The defendant contends that the prosecutor's statement concerning "the life of another little girl" was a reference to the defendant's baby daughter. Since there was no evidence of any wrongdoing by the defendant with regard to the baby, the defendant contends that this argument could only have served to improperly inflame the jury. Assuming *arguendo* that the defendant is correct, the trial court's prompt curative instruction was sufficient to remove any possible prejudice that may have resulted from this brief remark by the prosecutor.

[9]   The defendant also complains that the prosecutor stated to the jury: "I took an oath of office to uphold the Constitution . . ." The trial court overruled the defendant's objection to this remark. The defendant now contends that the remark was improper and prejudicial since it made the prosecutor appear as an "unbiased truth-teller." Arguments of counsel "must ordinarily be left to the sound discretion of the judge who tries the case and this Court will not review his discretion unless it is apparent that the impropriety of counsel was gross and well calculated to prejudice the jury." *State v. Locklear*, 291 N.C. 598, 603-04, 231 S.E. 2d 256, 260 (1977). The remark complained of was not supported by the evidence, but it was relatively innocuous and did not rise to the level of gross impropriety. The trial court did not abuse its discretion by overruling the defendant's objection.

The defendant also contends that several other portions of the prosecutor's closing argument were improper and prejudicial. He contends that each of the arguments complained of were expressions of the prosecutor's personal opinions and beliefs unsupported by any evidence. It suffices to say that we have reviewed each of the statements complained of and have concluded that they either were contentions of counsel and not statements of fact or that they were inferences which legitimately could have been drawn from the evidence introduced at trial. The jury arguments of the prosecutor did not involve any gross impropriety calculated to prejudice the jury such as would require us to hold that the trial court abused its discretion in denying the defendant's objections.

The defendant's final assignment of error is directed to the trial court's denial of his motion to set aside the verdicts on the ground that they were against the weight of the evidence. "A motion to set aside the verdict for the reason that it is against the greater weight of the evidence is addressed to the discretion of the trial court and its ruling will not be disturbed absent a showing of abuse of discretion." *State v. Gilley*, 306 N.C. 125, 131, 291 S.E. 2d 645, 648 (1982). No such abuse of discretion has been shown here.

The defendant received a fair trial free from prejudicial error.

No error.