677 S.E.2d 540 (2009)
STATE of North Carolina
v.
Roy Dean WORLEY.
No. COA08-1532.
Court of Appeals of North Carolina.
June 16, 2009.
*541 Attorney General Roy Cooper, by Assistant Attorney General Jane Ammons Gilchrist, for the State.
Daniel J. Clifton, Charlotte, for Defendant.
ERVIN, Judge.
Roy Dean Worley (Defendant) appeals from judgment entered 8 July 2008 convicting him of willfully violating the change of address requirements applicable to registered sex offenders in violation of N.C. Gen. Stat. § 14-208.11(a)(2) and sentencing him to a term of 107 to 138 months incarceration in the custody of the North Carolina Department of Correction.[1] After careful consideration of Defendant's arguments on appeal, we find no error.
At trial, the State presented evidence which tended to show that Defendant pled guilty to four counts of taking indecent liberties with a child in violation of N.C. Gen.Stat. § 14-202.1. Judgment was entered against Defendant on the basis of these guilty pleas on 15 April 2006. Defendant was thereafter required to register as a sex offender pursuant to N.C. Gen.Stat. § 14-208.7(a). According to N.C. Gen.Stat. § 14-208.9(a), "[i]f a person required to register changes address, the person shall report in person and provide written notice of the new address not later than the tenth day after the change ... of address."
Detective Courtney Mumm (Detective Mumm) of the Buncombe County Sheriff's Department oversaw the sex offender registration program in Buncombe County from the beginning of 2005 through February 2008. In 2004, Defendant received an address verification notice sent to him by the State Bureau of Investigation (SBI) at an address in the Lee Walker Heights Apartments in Asheville, North Carolina (Lee Walker Heights).[2] Defendant returned the letter, indicating that he had moved to Candler Knob Road in Asheville, North Carolina (Candler Knob), on 14 September 2004.
On 19 May 2005, Defendant submitted a notice of change of address indicating that he had moved back to Lee Walker Heights. At this time, Defendant lived with Laura Thomen (Thomen) despite the fact that the rules of the Asheville Housing Authority (Housing Authority), which operated Lee Walker Heights, and Thomen's lease prohibited registered sex offenders from residing there. As a result of this violation of the terms and conditions of her lease, Thomen and everyone living in her Lee Walker Height's apartment, including Defendant, were evicted.
After Detective Mumm mentioned that Defendant was living with Thomen despite his status as a convicted sex offender, Cornelia Battle, the Manager of Lee Walker Heights (Battle), called Thomen in for a conference and told her that her lease would be cancelled. *542 A notice instructing Thomen to vacate the Lee Walker Heights apartment was sent in July. The Housing Authority obtained the issuance of a Magistrate's Summons against Thomen on 29 July 2005. The court date specified in the Magistrate's Summons was 11 August 2005. According to one of Battle's records dated 30 August 2005, Thomen left her key in the drop box on 10 August 2005. After the court date, representatives of the sheriff's department changed the locks on Thomen's apartment. Defendant stopped living in Lee Walker Heights after the Housing Authority changed the locks.
The SBI sent an address verification notice to Defendant at his Lee Walker Heights address in 2005, but it was returned unclaimed. After becoming concerned that Defendant had left Lee Walker Heights without updating his address, Detective Mumm went to the Candler Knob address in an unsuccessful attempt to locate him. Detective Mumm had no contact with Defendant until he completed a change of address notice on 16 September 2005, in which Defendant stated that he had moved back to Candler Knob. On the form which he submitted to the sheriff's department at that time, Defendant stated that the effective date of his change of address was 16 September 2005.
In his own testimony, Defendant acknowledged having been convicted of a reportable offense in Haywood County and that he understood that he was required to register as a sex offender. After being placed on the registry, Defendant has changed his address ten or fifteen times. Defendant admitted knowing that, when he moved, he had ten days within which to notify the sheriff's department of his new address.
Defendant stated that after leaving Lee Walker Heights, he went back to Candler Knob. He then moved from Candler Knob to Kenilworth. Defendant testified that he had been homeless for three and one-half years, that he stayed in a van that resembled a camper, and that Detective Mumm was not able to locate him at Candler Knob because he was staying in the camper rather than the house.
Defendant went to the sheriff's department after he left Lee Walker Heights and changed his address to Candler Knob. At that time, Defendant did not talk to Detective Mumm; instead, he filled out some paperwork and gave it to the officer at the front desk, who said that the paperwork would be given to Detective Mumm. Although Defendant did not give a specific date when he went to the sheriff's department, he testified that he might have gone on 16 September 2005.[3]
On 19 October 2005, a warrant charging Defendant with failure to notify the sheriff's department of his change of address was issued. On 7 August 2006, the Buncombe County grand jury returned an indictment charging Defendant with failing to provide written notice of his change of address within the required ten day period. On 8 July 2008, a jury convicted Defendant of failing to comply with the sex offender registration law.[4] On the same date, the trial court entered judgment sentencing Defendant to a term of 107 to 138 months incarceration in the North Carolina Department of Correction. Defendant noted an appeal to this Court from the trial court's judgment.

I: Motions to Dismiss
Defendant initially contends that the trial court erred by denying his motions to dismiss at the close of the State's evidence and at the close of all evidence.[5] We disagree.
*543 When ruling on a motion to dismiss for insufficient evidence, the trial court must consider the record evidence in the light most favorable to the State, drawing all reasonable inferences in the State's favor. State v. McCullers, 341 N.C. 19, 28-29, 460 S.E.2d 163, 168 (1995). "The State is entitled to every reasonable intendment and inference to be drawn from the evidence, and any contradictions and discrepancies are to be resolved in favor of the State." State v. Malloy, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983). The only issue before the trial court in such instances is "`whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.'" State v. Turnage, 362 N.C. 491, 493, 666 S.E.2d 753, 755 (2008) (quoting State v. Crawford, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996) (internal citation omitted)). "`Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.'" Turnage, 362 N.C. at 493, 666 S.E.2d at 755 (quoting Crawford, 344 N.C. at 73, 472 S.E.2d at 925). As long as the evidence permits a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also "permits a reasonable inference of the defendant's innocence." State v. Butler, 356 N.C. 141, 145, 567 S.E.2d 137, 140 (2002).
The North Carolina Sex Offender and Public Protection Registration Programs require every individual who has been convicted of a reportable offense as defined by N.C. Gen.Stat. § 14-208.6(4), which includes offenses against minors and "sexually violent offenses," to register as a convicted sex offender with the sheriff of the county in which the person resides. N.C. Gen.Stat. § 14-208.7(a). According to the relevant statutory provisions, the sheriff in each of North Carolina's one hundred counties is required to obtain certain information from registering sex offenders, including the individual's full name, physical description, current photograph, fingerprints, driver's license number, home address, and the "type of offense for which the person was convicted, the date of conviction, and the sentence imposed." N.C. Gen.Stat. § 14-208.7(b). "If a person required to register [as a sex offender] changes address, the person shall provide written notice of the new address not later than the tenth day after the change ... of address." N.C. Gen.Stat. § 14-208.9(a).
The General Assembly has imposed criminal penalties upon individuals who are required to register and fail to either register or take some other action required by law. N.C. Gen.Stat. § 14-208.11. More particularly, N.C. Gen.Stat. § 14-208.11 provides that:
(a) A person required by this Article to register who willfully does any of the following is guilty of a Class F felony:
....
(2) Fails to notify the last registering sheriff of a change of address as required by this Article.
N.C. Gen.Stat. § 14-208.11. A conviction for violating N.C. Gen.Stat. § 14-208.11(a)(2) requires proof beyond a reasonable doubt that: "(1) the defendant is `a person required to register,' (2) the defendant `changes address,' and (3) the defendant fails to `provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom the person had last registered.'" State v. Abshire, ___ N.C.App. ___, ___, 666 S.E.2d 657, 661, disc. review allowed, 362 N.C. 683, 670 S.E.2d 236 (2008) (citing N.C. Gen.Stat. §§ 14-208.9, 14-208.11 (2005)). This Court has defined "address" as used in N.C. Gen.Stat. §§ 14-208.9(a) and 14-208.11(a)(2) as "a `home address,' ... [or] a place where a registrant resides and where that registrant receives mail or other communication." Abshire, ___ N.C.App. at ___, 666 S.E.2d at 663.
At trial, Deputy Clerk of Superior Court Elizabeth Whittenberger testified that judgment *544 was entered against Defendant on 15 April 1996 based on his plea of guilty to four felony counts of taking indecent liberties with a child in violation of N.C. Gen.Stat. § 14-202.1. As a result, the record clearly establishes that Defendant was subject to the registration requirement set out in N.C. Gen. Stat. § 14-208.7(a).
Furthermore, Battle testified that she hand wrote a statement on 30 August 2005 which indicated that Thomen left her keys in the drop box and vacated her apartment at Lee Walker Heights on 10 August 2005 as a result of her eviction, which stemmed from a breach of her lease caused by her decision to allow a registered sex offender such as Defendant to live in her apartment. Despite the fact that Thomen returned her keys, the locks on the doors to her apartment were changed because "sometimes" evicted residents "come back[.]" When asked whether Defendant "stopped living there" after the Housing Authority obtained a judgment against Thomen on 11 August 2005, Battle responded, "[h]e had to because we changed the locks."
Detective Mumm testified that Defendant completed a change of address form indicating that he had moved from Lee Walker Heights to Candler Knob on 16 September 2005. After receiving notice of Thomen's eviction, Mumm had attempted to "ascertain whether the defendant still lived" at Lee Walker Heights and did not see him there. When she asked the apartment manager whether Thomen and her roommates still lived in the apartment, the manager answered, "[n]o, she had been evicted."
Defendant testified that he moved out of Lee Walker Heights in late July or early August and that he knew that he only had ten days to notify the sheriff's department of his move. However, Defendant admitted that "I have a tendency to forget sometimes[.]" Defendant described himself as a "drifter" and attested that "it's [sometimes] difficult for the Sheriff's Office to keep up" with him. Defendant testified that he went to the sheriff's department and said, "I'm here to register." An officer "gave him a piece of paper to change my address from Lee Walker to Candler Knob[,]" and Defendant submitted the form. The form was dated 16 September 2005. When asked whether the "meeting at the Sheriff's Office... happened [in] mid September 2005[,]" Defendant replied, "I'm not sure, but I think it is, yes."
In Abshire, this Court declined to construe N.C. Gen.Stat. §§ 14-208.9(a) and 14-208.11(a)(2) so as to read "`address' as `location,'" on the grounds that, if "any change in location triggered an address change, then every registrant would be under a continuing obligation to re-register her address every ten days unless she never left her registered address." Abshire, ___ N.C.App. ___, ___, 666 S.E.2d at 663. Rather, this Court concluded that an "address" as that word is used in N.C. Gen.Stat. §§ 14-208.9(a) and 14-208.11(a)(2) is "a `home address,' ... [or] a place where a registrant resides and where that registrant receives mail or other communication." Id. The Abshire Court concluded that the record developed in that case did not establish that the defendant had changed her "address" for the following reasons: (1) the "defendant [never] stopped receiving mail or other communications at [her registered address]"; the defendant "either picked up the mail herself or had [a friend] bring her the mail"; the "defendant went to stay with her father two or three weeks"; the "defendant ... left all of her personal belongings at [her registered address], including her pets"; the defendant "returned [to her registered address] each day to retrieve new clothing for herself and her children and to feed her animals"; the defendant "never packed a suitcase"; the defendant slept at [her registered address] twice after the alleged address change; and defendant held "out [her registered address] to the public as her address." Abshire, ___ N.C.App. at ___, 666 S.E.2d at 664-65. In light of these facts, the Court stated that:
To present substantial evidence that a defendant has changed her address within the meaning of N.C. Gen.Stat. § 14-208.11, the State need not necessarily show that the defendant removed her personal belongings from a particular address, stopped sleeping at a particular address, or stopped holding out to the public a particular *545 address as her own; however, in this case, something more was needed.
Abshire, ___ N.C.App. at ___, 666 S.E.2d at 665. As a result, this Court concluded that, given the facts at issue in that case, no change of address had occurred for purposes of N.C. Gen.Stat. §§ 14-208.9(a) and 14-208.11(a)(2).[6]
Defendant argues that he had not established a new "address" after leaving Lee Walker Heights until the date upon which he submitted his notice of change of address to the sheriff's department despite the fact that he had been evicted from Lee Walker Heights more than one month earlier. After leaving Lee Walker Heights, Defendant testified:
Well, I went back to Candler Knob, and I moved from Candler Knob to 41 Kenilworth, and when they come (sic) to check on me I wasn't there at the time because I move around a lot. I have a lot of friends that I stay with off and on. I have been homeless for about three and a half years. I stayed in the van the biggest part of the day time. I didn't stay in the house, but I stayed in the van that was like a camper, and I came to town a lot. I rode the bus a lot into town back and forth, and that's why they couldn't keep up with me. I'm a hard personI'm a drifter, you know as they say, but drifting from one town to the next, you know, one address to the next, you know....
Defendant stated that his van was located at the Candler Knob address, which he gave as his new address in his 16 September 2005 filing with the sheriff's department.
We now apply the definition of "address" set out in Abshire, ___ N.C.App. at ___, 666 S.E.2d at 663, to the facts revealed in the present record. In this case, the record does not clearly state whether Defendant received "mail" or "communication" at all. In fact, Defendant stated that he was difficult to find. Defendant did not intend to return to Lee Walker Heights or hold this location out to the public as his "address"; in fact, he could not return to Lee Walker Heights or receive mail there because he could not live in Housing Authority property given his status as a registered sex offender. This fact alone distinguishes this case from Abshire, in which the defendant always intended to return to her registered address and simply wanted to visit her father for a few weeks.
After Defendant left Lee Walker Heights, the evidence tends to show that he, like many individuals, may have traveled from place to place within his hometown. Among other things, Defendant claims to have spent nights at the homes of friends; he may have even traveled to different towns on a regular basis. Even so, there is substantial evidence tending to show that Defendant "reside[d]" at Candler Knob after he left Lee Walker Heights. Defendant himself stated that after he left Lee Walker Heights, "[w]ell, I went back to Candler Knob.... I stayed in the van the biggest part of the day time. I didn't stay in the house, but I stayed in the van that was like a camper[.]"
According to Defendant, individuals with no permanent home are not required to provide change of address information until such time as they obtain a new residence. After careful consideration of the relevant statutory language and the nature and purpose of the sex offender registration program, we believe that the sex offender registration statutes operate on the basis of an assumption that everyone does, at all times, have an "address" of some sort, even if it is a homeless shelter, a location under a bridge or some similar place. In the event that we were to accept the argument that "drifters" such as Defendant have no "address" as defined by N.C. Gen.Stat. §§ 14-208.9(a) and 14-208.11(a)(2), then such individuals would be effectively immune from the registration requirements found in current law as long as they continued to "drift." We do not believe the Abshire Court nor the General Assembly intended this sort of anomalous result.
*546 As a result, since Defendant did not intend to return, nor was it possible for him to return, to Lee Walker Heights, his "address" as defined in Abshire undoubtedly "change[d]" following Thomens' eviction. Furthermore, there is substantial evidence in the record tending to show that Defendant changed his "address" from Lee Walker Heights to Candler Knob more than ten days prior to 16 September 2005. At an absolute minimum, Defendant had a residence between the time of his departure from Lee Walker Heights in August 2005 and the submission of his change of address form on 16 September 2005. Thus, we conclude there was ample record support for the jury's verdict convicting Defendant of failing to provide timely notice of his change of address in violation of N.C. Gen. Stat § 14-208.11(a)(2). For that reason, the trial court did not err by denying Defendant's motion to dismiss at the close of all evidence. This assignment of error is overruled.

II: Void for Vagueness Challenge to Change of Address Statutes
Defendant also contends that the trial court erred by not declaring N.C. Gen.Stat. §§ 14-208.9(a) and 14-208.11(a)(2) unconstitutionally void for vagueness given the absence of a statutory definition of "address" or "change of address" that suffices to provide adequate guidance to someone in Defendant's unique situation. We note that Defendant did not raise his void for vagueness challenge to N.C. Gen.Stat. §§ 14-208.9(a) and 14-208.11(a)(2) before the trial court. As a result, we need not consider Defendant's constitutional arguments on the merits and decline to do so. See N.C. R.App. P. 10(b)(1); see also State v. Raines, 362 N.C. 1, 18, 653 S.E.2d 126, 137 (2007); State v. Benson, 323 N.C. 318, 321-22, 372 S.E.2d 517, 519 (1988).
For all of the reasons set forth above, we conclude that Defendant received a fair trial free from prejudicial error.
NO ERROR.
Judges McGEE and JACKSON concur.
NOTES
[1] Although Defendant's brief and the judgment and commitment entered against Defendant indicate that Defendant was also convicted of having attained the status of an habitual felon, no verdict sheet reflecting the jury's determination of Defendant's habitual felon status was included in the record on appeal.
[2] Lee Walker Heights is a public housing facility operated by the Asheville Housing Authority.
[3] Although Defendant's trial counsel sought and obtained the entry of two orders requiring that Defendant be examined for the purpose of determining his competence to stand trial, both examinations resulted in conclusions that Defendant was, in fact, competent.
[4] As noted above, Defendant was evidently convicted of having attained habitual felon status as well.
[5] According to well-established North Carolina law, if a defendant "introduces evidence" after the denial of a motion to dismiss made at the close of the State's evidence, "he thereby waives [the] motion ... made prior to the introduction of his evidence and cannot urge such prior motion as ground for appeal." State v. Bruce, 315 N.C. 273, 280, 337 S.E.2d 510, 515 (1985) (quoting State v. Leonard, 300 N.C. 223, 231, 266 S.E.2d 631, 636, cert. denied, 449 U.S. 960, 101 S.Ct. 372, 66 L.Ed.2d 227 (1980)). As a result of the fact that Defendant offered evidence following the denial of his motion to dismiss at the close of the State's evidence, the correctness of the trial court's decision to deny that motion is not properly before us. For that reason, the discussion in the body of this opinion focuses on Defendant's contention that the trial court erroneously denied Defendant's motion to dismiss at the close of all of the evidence.
[6] We note that the State has appealed this Court's decision in Abshire in light of Judge Hunter's dissent on the sufficiency of the evidence issue, that the Supreme Court allowed the State's motion for temporary stay of our Abshire decision on 6 October 2008, and that the Supreme Court granted the State's petition for discretionary review with respect to issues in addition to those discussed in the dissenting opinion in this Court. See State v. Abshire, 362 N.C. 683, 667 S.E.2d 724 (2008); State v. Abshire, 362 N.C. 683, 670 S.E.2d 236 (2008). However, at this point, our Abshire decision remains controlling.